IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT G. LUSE and KAY LUSE**<br>**Husband and Wife,** | : | **Civil No. 1:09-CV-1221** |
| **Plaintiffs** | : | |
| v. | : | |
| **LIBERTY MUTUAL FIRE**<br>**INSURANCE CO.,** | : | **J. Rambo** |
| **Defendant** | : | |

## M E M O R A N D U M

Before the court is Defendant Liberty Mutual Fire Insurance Company's ("Liberty") motion for summary judgment. (Doc. 17.) For the reasons that follow, the motion will be granted.

**I.      BACKGROUND**

   **A.  Facts**[1]

This case arises out of a fire that occurred in Plaintiffs Robert and Kay Luses' (the "Luses") home on August 4, 2007, in York County, Pennsylvania. (Def.'s Statement of Material Fact ("SMF"), ¶ 3.) At the time of the fire, the Luses were insured under a LibertyGuard Condominium Policy which had been issued by Liberty. (*Id.*, ¶ 4.) The Luses promptly reported the fire to Liberty, and on August 6,

---

[1] In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

2007, a home inspection was scheduled. (Doc. 17-5, at 8 of 30; Dep. of Kay Luse, at 28.) On August 7, 2007, an inspection was done by William Kishbaugh, an employee of Liberty.[2] (*Id.*, ¶ 17.) During this visit, only Mrs. Luse was present. Mr. Kishbaugh observed fire and smoke damage in the kitchen, and significant sooting in the kitchen, as well as into the living room/dining room area. (*Id.*, ¶ 18.) Despite the damage, Mr. Kishbaugh determined that the house was nonetheless liveable, and no request was made by Mrs. Luse to have the family moved out of the condominium.[3] (*Id.*, ¶¶ 18, 19.) During this visit, Mr. Kishbaugh informed Mrs. Luse that Liberty would only provide secondary coverage for the damage because the Luses had a condominium policy, in addition to the Liberty policy, which provided primary coverage. (Doc. 17-11, at 12 of 74; Dep. of William Kishbaugh, at 44, 45.) Mr. Kishbaugh also requested a copy of the master condominium insurance policy, which Mrs. Luse indicated she did not have at that time. (Doc. 17-11, at 12 of 74; Dep. of William Kishbaugh, at 44.) At the time of the inspection, Mr. Kishbaugh had not seen a copy of the Luses' separate condominium policy, and had only briefly reviewed the Liberty policy with regard to its scope of coverage, the effective date, and any limits or special endorsements. (Doc. 17-11, at 13 of 74; Dep. of William Kishbaugh, at 46-47.) Thus, Mr. Kishbaugh's determination that the Liberty policy would nonetheless be secondary to the condominium policy was made based on his previous experience because "[t]hey always are." (*Id.*, at 46.) Later, Mr. Kishbaugh confirmed that the master condominium policy was in fact the primary policy with

---

[2] Plaintiffs refute this fact to the extent Mr. Kishbaugh could not remember the exact date. However, Mrs. Luse's deposition indicates that Mr. Kishbaugh inspected the house on either August 7th or 8th of 2007, and is sure it was a Tuesday. (Doc. 17-11, at 11 of 74; Dep. of Kay Luse, at 41.)

[3] Plaintiffs also contest this fact arguing that Liberty did not do a reasonable inspection of the house and that the inspection that was done was in bad faith. (Pls.' Statement of Material Facts, ¶¶ 18, 19.) These are legal arguments which the court will address below.

2

regard to building and structure coverage, but that it had policy limits when it came to additional living expenses, such as relocation coverage, and that any additional living expenses were to be covered under the Liberty policy. (Doc. 17-11, at 13 of 74; Dep. of William Kishbaugh, at 48.) This was not explained to Mrs. Luse at the time of the inspection. In any event, Mr. Kishbaugh did not believe it was necessary to explain relocation costs for "such a small incident" and because the house did not seem to him to be unliveable. (Doc. 17-13, at 12 of 74; Dep. of William Kishbaugh, at 48-49.)

On August 10, 2007, Mrs. Luse called Anthony Waslesyn, Mr. Kishbaugh's supervisor, to discuss the case. (SMF, ¶ 20.) Mr. Waslesyn made a note of this phone call, which indicated that Mrs. Luse asked for authorization to have the house cleaned because there were two people living there with respiratory issues– Mr. Luse and the couple's grandson. (SMF, ¶¶ 20, 21.) Authorization was given to have the house cleaned. Nothing in Mr. Waslesyn's notes indicated that Mrs. Luse asked to have the family relocated. (SMF, ¶ 21.) Four days later, Mr. Waslesyn received a call from Mr. Luse. (SMF, ¶ 22.) Mr. Waslesyn's deposition indicates that Mr. Luse again requested authorization to have the house cleaned, and that Mr. Waslesyn informed Mr. Luse that he had already authorized cleaning during his conversation with Mrs. Luse on August 10, 2007. (SMF, ¶ 22.) Plaintiffs contest this fact to the extent that they claim it does not fully reflect the conversation. Plaintiffs state that Mr. Luse called to express his frustration over the information that the master condominium policy would be the primary provider of insurance coverage, and his confusion over what coverage Liberty was willing to provide.[4] (Pl.'s Statement of Material Facts, ¶ 22.)

---

[4] Plaintiff fails to cite to anything in the record to support this fact

3

On August 24, 2007, Paul Schrembeck, Mr. Waslesyn's supervisor, received a call from Barbara Shultz, Mr. Luse's respiratory therapist. (SMF, ¶¶ 23, 26.) Mr. Schrembeck was told by Ms. Shultz that the conditions in the home might be adversely affecting Mr. Luse's respiratory issues. (SMF, ¶ 26.) Mr. Schrembeck then took immediate action to have the family relocated. (*Id.*)

Prior to this phone call, but over two weeks after the fire had occurred, on August 21, 2007, Ms. Shultz tested Mr. Luse and found that there had been a drop in his oxygen saturation levels. (SMF, ¶ 24.) Ms. Shultz indicated in her report that the fire could "perhaps" have been a cause of the decreased oxygen levels. (SMF, ¶ 25.) Ms. Shultz also testified that, if someone from Liberty had contacted her right after the fire she would have informed them that the conditions were inadequate for Mr. Luse's respiratory condition. (Pls.' Statement of Material Facts, ¶ 25.) There is no indication in the record that anyone from Liberty knew that Mr. Luse was seeing a respiratory therapist.

### B. Procedural History

The Luses filed a complaint in the Court of Common Pleas of York County, Pennsylvania, on June 8, 2009. On June 26, 2009, Liberty removed the case to this court. (Doc. 1.) Shortly thereafter, on July 7, 2009, they filed its answer and affirmative defenses. (Doc. 3.) On May 14, 2010, Liberty filed their motion for summary judgment, supporting brief, and statement of material facts. (Docs. 17, 18, 19). On May 21, 2010, the Luses filed their brief in opposition and counter-statement of material facts. (Docs. 20, 21.) Liberty replied on June 4, 2010. (Doc. 23.) The motion is now ripe for disposition.

## II.      LEGAL STANDARD

4

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the

evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.    DISCUSSION

Plaintiffs' claim against Defendant is a Pennsylvania state law claim based on insurance bad faith. The Luses assert that Liberty failed to properly investigate the Luses' claim once they had information that individuals in the household suffered from respiratory health issues, and that they misinformed the Plaintiffs of the extent of their coverage.

In Pennsylvania, bad faith claims against insurance companies are governed by Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, which reads,

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To establish a claim, a plaintiff must show: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Lockhart v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 597476, at *6 (W.D.Pa. 2010). While the cases usually speak in terms of the denial of benefits, "[f]ailure to conduct a reasonable investigation based on available information may" also support a claim of bad faith on the part of an insurance company. *Giangreco v. U.S. Life Ins. Co.*, 168 F. Supp. 2d 417, 423 (E.D. Pa. 2001).

6

Although not defined in the state "bad faith" has been interpreted to mean "frivolous or unfounded refusal to pay proceeds of a policy which imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Lockhart*, 2010 WL 597476, at *6 (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994) (internal quotations omitted)). Intuitively, insurance companies must investigate claims in a reasonable manner. *Id.* Furthermore,

> [t]o defeat a bad faith claim, the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusions. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

*Id.* (quoting *Mann v. UNUM Life Ins. Co. of Am.*, 2003 WL 229175545, at *6 (E.D. Pa. 2003).

In addition, there is a heightened burden of proof in bad faith claims, and a plaintiff must demonstrate by clear and convincing evidence that an insurer acted in bad fath. "The clear and convincing standard requires evidence of bad faith so clear, direct, weighty and convincing so as to enable the factfinder to make its decision with clear conviction." *Lockhart*, 2010 WL 597476, at *6 (quoting *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 752 (3d Cir. 1994) (internal citations omitted). Thus, a plaintiff's burden is quite high when opposing summary judgment. *Id.*

In the instant case, Plaintiffs have failed to show that there are genuine issues of material fact, which ir resolved in Plaintiffs' favor would allow a reasonable jury to conclude by clear and convincing evidence that Liberty acted in bad faith when investigating Plaintiffs' claims. The record reflects that three or four

7

days after the fire, Liberty sent a representative to the Luses' home to evaluate the damage. While there, the representative noticed some soot and smoke damage, but determined that the house was liveable. Only Mrs. Luse was present, and she did not mention that anyone had respiratory problems and did not ask that the family be relocated.

Three days later, on August 10, 2007, Mrs. Luse placed a call to Liberty and spoke with Mr. Waslesyn, the supervisor of the individual who conducted the initial evaluation of the home. During this call Mrs. Luse asked for permission to have the house cleaned, and at this time informed Liberty that there were two individuals living in the home with respiratory problems. Mr. Waslesyn authorized the cleaning of the home. Nothing in the record indicates that Mrs. Luse asked that the family be relocated.

On August 14, 2007, Mr. Waslesyn received a call from Mr. Luse. Mr. Luse again requested authorization to have the house cleaned. Mr. Waslesyn informed him that such authorization had already been provided. There is some dispute about whether this conversation also involved discussion of the extent of Liberty's policy coverage. However, there is nothing in the record to suggest that Mr. Luse told Liberty about his respiratory problems or he asked to be relocated.

On August 24, 2007, Liberty first learned of the extent of the respiratory problems suffered by Mr. Luse. This information was received through a phone call from Mr. Luse's respiratory therapist, Barbara Shultz, to Mr. Shrembeck, Mr. Weslesyn's supervisor. Ms. Shultz informed Mr. Shrembeck that the conditions in the house might be affecting Mr. Luse's respiratory issues. After this phone call, Mr. Shrembeck took action to have the family relocated from the residence.

Plaintiffs argue that the investigation was unreasonable because Liberty did not do enough to ascertain the extent of the respiratory issues in the household

and immediately have the family relocated, and that they acted in bad faith when they informed the Luses that they would be the secondary provider to the Luses condominium policy. Given the facts before the court, these allegations do not constitute bad faith.

As soon as Liberty learned of the extent of Mr. Luse's respiratory problems they took action to relocate the family. Before this they had received one comment regarding the health of the individuals living in the house, and this was a comment by Mrs. Luse mentioning the health problems and requesting permission to have the residence cleaned. The cleaning was immediately authorized. It is well understood that insurance companies must conduct a reasonable investigation; however, Plaintiffs cite to no case law suggesting they must conduct some heightened investigation. This is particularly true in light of the fact that Plaintiffs did not initially apprise Liberty of the extent of Mr. Luse and his grandson's respiratory complications. Plaintiffs never requested to be moved before August 24, 2007, when Mr. Luse's respiratory therapist called to make this request. As soon as Liberty learned of this, it authorized the Luses to relocate from the residence. Given these facts, Liberty's conduct was arguably negligent, and "mere negligence or bad judgment is not bad faith." *Lockhart*, 2010 WL 597476, at *6 (quoting *Terletsky*, 649 A.2d at 688).

Plaintiffs' second allegation of bad faith is equally as flawed. Liberty's failure to apprise the Luses on the first inspection of the home that any additional living expenses would be covered by Liberty does not establish bad faith. Mr. Kishbaugh informed Mrs. Luse that Liberty's coverage was secondary to that of the condominium association, a representation which was true, except for the fact that the Luses had additional living expense coverage through Liberty. At the intitial inspection, Mr. Kishbaugh did not believe additional living expense coverage would

be necessary because in his judgment it was a small incident, he was not aware of any health concerns, and no one requested that the family be relocated. Thus, the fact that Mr. Kishbaugh did not know that Liberty provided this coverage at the time of the inspection cannot be said to be bad faith. This is particularly true given that Liberty never denied Plaintiffs the right to relocate, and paid all of Plaintiffs' relocation expenses once relocation was requested. As such, Plaintiffs have failed to show bad faith on the part of Liberty.

### IV. <u>CONCLUSION</u>

Liberty was under a duty to reasonably investigate all claims, and the undisputed facts in this case suggest that they met this obligation. If Plaintiffs believed they needed to be relocated due to health concerns they should have raised this issue when they contacted Liberty. Instead, they mentioned nothing until August 10, 2007, at which time a passing comment was made that individuals in the house had respiratory issues. No request was made that they be relocated, and the cleaning that was requested was immediately authorized. It was not until the call from Ms. Shultz on August 24, 2007, that Liberty became aware of Mr. Luse's health condition, after which, Liberty immediately undertook to have the family relocated. Plaintiffs have failed to present that there are genuine issues of material fact, which if resolved in Plaintiffs' favor would allow a reasonable jury to conclude, by clear and convincing evidence, that Liberty acted in bad faith. Therefore, summary judgment for Liberty will be granted. An appropriate order will be issued.

s/Sylvia H. Rambo<br>United States District Judge

Dated: July 7, 2010.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT G. LUSE and KAY LUSE Husband and Wife,** | : | **Civil No. 1:09-CV-1221** |
| **Plaintiffs** | : | |
| v. | : | |
| **LIBERTY MUTUAL FIRE INSURANCE CO.,** | : | **J. Rambo** |
| **Defendant** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant Liberty Mutual Fire Insurance Co.'s motion for summary judgment, (Doc. 17), is **GRANTED**. The Clerk of Court shall enter judgment for Defendant and against Plaintiffs and close the file.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: July 7, 2010.